**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------X  Case No. 18-cv-4835(DLI)(JO)
CLARA PEREZ,

                       Plaintiff,                                 **FIRST
AMENDED COMPLAINT**

      - against -

COMMITTEE FOR THE ADVANCEMENT OF         **PLAINTIFF DEMANDS**
TORAH d/b/a OK KOSHER CERTIFICATION,        **A TRIAL BY JURY**
RABBI DON YOEL LEVY, individually, and
RABBI KALMAN WEINFELD, individually,

                       Defendants.
------------------------------------------------------------------------X

CLARA PEREZ, ("Plaintiff"), by and through her attorneys, PHILLIPS & ASSOCIATES, PLLC, against COMMITTEE FOR THE ADVANCEMENT OF TORAH d/b/a OK KOSHER CERTIFICATION ("COMMITTEE"), RABBI DON YOEL LEVY ("LEVY"), individually, and RABBI KALMAN WEINFELD ("WEINFELD"), individually, (collectively, as "Defendants") alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

**NATURE OF THE CASE**

1. This is a civil action based upon violations that Defendants committed of Plaintiff's rights guaranteed to her by: (i) the gender discrimination provisions of the **New York City Human Rights Law**, New York City Administrative Code § 8-107 *et seq.* ("NYCHRL"); (ii) the religious discrimination provisions of the **NYCHRL**; (iii) the retaliation provisions of the **NYCHRL**; (iv) tortious interference with business relations under New York Law; and (v) any other claim(s) that can be inferred from the facts set forth herein.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332 as Plaintiff is a citizen of Florida, Defendant COMMITTEE is a citizen of New York as it is a New York domestic not-for-profit corporation with its principal place of business located in New York, Defendant LEVY is a citizen of New York, and Defendant WEINFELD is a citizen of New York, and the matter in controversy exceeds $75,000.00.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

4. At all relevant times herein, Plaintiff is a resident of Florida and is a "person" and an "employee" entitled to protection as defined by the NYCHRL.

5. Defendant COMMITTEE did and does business as "OK Kosher Certification," was and is a New York domestic not-for-profit corporation, with its principal place of business located at 391 Troy Avenue, New York, New York 11213.

6. At all relevant times herein, Defendant LEVY was and is the President of Defendant COMMITTEE. In that capacity, Defendant LEVY, jointly with Basil LLC, which was the restaurant where Plaintiff worked, ("the Restaurant" or "Basil"), oversaw the regular operations of the Restaurant and was responsible for matters with respect to the terms of the Restaurant's employment of its employees, including Plaintiff. Furthermore, Defendant LEVY had the power to recommend hiring, firing, and disciplinary action of all of the Restaurant's employees and recommend supervision and control of employee's conditions of employment. In fact, Defendant LEVY recommended the termination of Plaintiff's employment to the owner of the Restaurant.

7. At all relevant times herein, Defendant WEINFELD was Defendant COMMITTEE's Rabbinic Coordinator for Food Services. In that role, Defendant WEINFELD directly supervised Defendant COMMITTEE's and the Restaurant's joint employees, including Plaintiff. Additionally, Defendant WEINFELD had the power to recommend hiring, firing, and disciplinary action of all of Defendant COMMITTEE's and the Restaurant's joint employees and recommend supervision and control of employee's conditions of employment. In fact, Defendant WEINFELD, jointly with Defendant LEVY, recommended the termination of Plaintiff's employment to the owner of the Restaurant.

8. At all relevant times herein, Defendant COMMITTEE "employs" four or more "employees," and is thus an "employer" within the meaning of the NYCHRL, while Defendants LEVY and WEINFELD are "employers" and "persons" within the meaning of the NYCHRL.

**MATERIAL FACTS**

9. Defendant COMMITTEE is a not-for-profit corporation that works with, *inter alia*, restaurants to provide kosher certification of food products. Defendant COMMITTEE certifies that the goods or services and the ingredients, as well as the mode and manner of manufacture, handling and packing, and the wrappings, and other containing materials, meet all requirements of the Mosaic Code and biblical requirements, so as to qualify them for Orthodox Jewish use and consumption, and thus kosher quality. To achieve certification, Defendant COMMITTEE sends its agent or employee to inspect or maintain a business's compliance with the Mosaic Code and biblical requirements.

10. Notwithstanding COMMITTEE's official capacity, on every occasion that it had to inspect Basil, it utilized the opportunity to wield its control over Basil's employees' attire, speech, the Restaurant's ambiance, its hours of operation, when maintenance work was conducted,

and who they hired and/or fired.

11. In or around March 2010, Plaintiff, a female and Catholic, began working as a manager for the Restaurant located at 270 Kingston Avenue, Brooklyn, New York 11213.

12. In or around March 2010, the Restaurant began to work with Defendants to obtain certification that the Restaurant met the required Kosher standards for its customers.

13. Defendants supervised the Restaurant on a daily basis, controlled the compensation of the Restaurant's employees, controlled the attire of the Restaurant's employees, including Plaintiff (e.g., female employees must wear ankle length skirts and cover their cleavage), controlled the demography of the Restaurant's employees with respect to sexual orientation and religion, and controlled the general ambiance (e.g., music) of the Restaurant.

14. In fact, Defendant WEINFELD demanded Plaintiff and the owner of the Restaurant to play Jewish music only and prohibited them from playing music with female vocalists.

15. Defendant WEINFELD also instructed Plaintiff and the owner of the Restaurant to turn off songs by musicians like Bob Marley and Stevie Wonder.

16. On May 16, 2011, Plaintiff started to own shares of the Restaurant. Plaintiff was earning approximately $62,000.00, plus other benefits and profits from business sales.

17. From in or around 2012 continuously until 2017, Defendant WEINFELD subjected Plaintiff to egregious hostile work environment based on Plaintiff's sex and/or gender, and religion.

18. For instance, throughout Plaintiff's employment, Defendant WEINFELD referred to Plaintiff as a "shiksa," which is a derogatory term against non-Jewish women.

19. Also, throughout Plaintiff's employment, Defendant WEINFELD targeted Catholic employees of the Restaurant, including Plaintiff and an Executive Chef, by proclaiming that the COMMITTEE did not care about any of their grievances because they are

4

Catholics and therefore, "goyim."

20. By way of another example, in or around the summer of 2012, during an inspection of the Restaurant, Defendant WEINFELD came to Plaintiff's office and told Plaintiff that she had a "great ass" for her age. Plaintiff immediately told Defendant WEINFELD that he should not talk to her like that. Defendant WEINFELD retorted that he was just making an observation on her body and Plaintiff should take it as a compliment. Defendant WEINFELD's comments regarding Plaintiff's body were commonplace whenever they interacted.

21. In or around the summer or fall of 2012, during a meeting between Plaintiff, Defendant WEINFELD, Udi Ezra ("Mr. Ezra"), a pastry chef, and the owner of the Restaurant, Plaintiff complained about the performance of Mr. Ezra to Defendants. Defendant WEINFELD told Plaintiff that she had no credibility because she was not Jewish. To wit, WEINFELD indicated that he only believed Mr. Ezra and the owner of the Restaurant because they were Jewish and did not believe anything that Plaintiff said.

22. By way of another example, Defendant WEINFELD asked Plaintiff: "Is it true that Spanish women are good in bed?" Plaintiff objected to Defendant WEINFELD's unlawful question. Defendant WEINFELD proceeded to tell Plaintiff that Orthodox Jewish men are allowed to have sex with "goyim" women, if they pay for sex. Deeply offended by Defendant WEINFELD's sexually harassing comment, Plaintiff walked out of the office without responding.

23. In or around the end of 2013 or early 2014, Plaintiff informed Defendant WEINFELD that one of Plaintiff's pastry chefs was being sexually harassed by another employee of Defendant COMMITTEE. Plaintiff showed Defendant WEINFELD the sexually harassing text messages that the female pastry chef received from one of Defendant COMMITTEE's

5

employees. Defendant WEINFELD condoned and acquiesced to the sexual harassment by telling Plaintiff "what's the big deal?" The text messages clearly displayed a lack of consent on behalf of the female pastry chef and Defendants' employee continued the sexually harassing comments and suggestions.

24. On March 30, 2014, Plaintiff e-mailed Defendant LEVY about Defendant WEINFELD's discriminatory comments towards her based on her being Catholic. Specifically, Plaintiff wrote: "In the past with ref to Udi Ezra in meetings I have recorded Rabbi Weinfeld has stated that he believes Udi because Udi is Jewish and that he does not believe me because I am [C]atholic . . . . I feel that I am being targeted and discriminated against by The OK since Rabbi Weinfeld represents the OK and threatens me all the time to remove the OK Certification if I disagree with him." In response to Plaintiff's e-mail, Defendant LEVY refused to investigate Plaintiff's grievance without having received an audio recording from Plaintiff regarding Defendant WEINFELD's discriminatory remarks. Defendant LEVY wrote: "If you don't have the recording then I cannot take that into consideration. As mentioned before all the other restaurant owners I have spoken to speak very highly of Rabbi Weinfeld. So there seems to be another issue here. Possibly a misunderstanding."

25. On March 30, 2014, in the same e-mail correspondence discussed above, Defendant LEVY, as another indication that Defendant COMMITTEE exercised power over the Restaurant's employees, demanded that Plaintiff and the Restaurant compensate three "mashgichim," or supervisors assigned to monitor the kashrut status of the Restaurant, $16.00 per hour. Defendant LEVY threatened that any compensation below said hourly rate would cause the COMMITTEE to deny the Restaurant's kosher certification.

26. By way of another example, in or around the end of 2015, Plaintiff told Defendant WEINFELD that one of COMMITTEE's employees touched Plaintiff on her buttocks.

6

Defendant WEINFELD responded by telling Plaintiff that she should be proud that a young man found her attractive despite her age. Plaintiff was deeply offended by this unlawful and sexually harassing comment.

27. By way of another example, in 2016, Defendant WEINFELD, again, called Plaintiff a "shiksa," and therefore, prohibited Plaintiff from hiring Jewish servers as he claimed that Jewish people could never work for "shiksas" and instead, it should be the other way around.

28. By way of another example, in or around the middle of 2016, Defendant WEINFELD came to the Restaurant intoxicated. He then asked Plaintiff how long it has been since she was with a man. Plaintiff understood Defendant WEINFELD's question to be asking when was the last time she had sex. Defendant WEINFELD again told Plaintiff that he was allowed to have sex with a "goyim" as long as he paid for it. Plaintiff immediately objected to Defendant WEINFELD's unlawful conduct. Defendant WEINFELD proceeded to move towards Plaintiff and rubbed his hands from Plaintiff's breasts down to her buttocks. Plaintiff immediately pushed Defendant WEINFELD and started to scream at him.

29. Moments later, one of the Restaurant's servers came and saw Defendant WEINFELD sexually harassing Plaintiff.

30. The male server immediately interrupted and asked Plaintiff if she was okay. The male server then asked Defendant WEINFELD if there was a problem. Defendant WEINFELD did not respond and immediately left. Plaintiff broke down and told the male server about Defendant WEINFELD's sexual assault.

31. Subsequently thereafter, Plaintiff reported Defendant WEINFELD's sexual assault to Defendant LEVY. Defendant LEVY asked Plaintiff if she had any proof. Plaintiff told Defendant LEVY that a male server witnessed Defendant WEINFELD's unlawful conduct.

Defendant LEVY proceeded to ask Plaintiff if the male server was Jewish. When Plaintiff answered in the negative, Defendant LEVY said that he did not trust "goyim" people and that he did not trust what Plaintiff had just reported to him. Lastly, Defendant LEVY told Plaintiff that if Plaintiff persisted with her accusation against Defendant WEINFELD, Defendant COMMITTEE would remove the Restaurant's kosher certification.

32. One week later, Defendant WEINFELD told Plaintiff that she did a "stupid thing" reporting him because "no one will ever believe a goyim girl." Defendant WEINFELD continued that it would be in Plaintiff's best interest not to report him again, and threatened that he was going to remove the Restaurant's certification and insist on the termination of Plaintiff's employment.

33. In or around mid or late 2016, Defendant WEINFELD found out that one of the Restaurant's female baristas was gay and immediately told Plaintiff that the barista's employment at the Restaurant was against the Torah and prohibited by Jewish law. Plaintiff objected to Defendant WEINFELD's discriminatory comment.

34. In or around April and May 2017, Plaintiff complained to Defendant LEVY about one of the COMMITTEE's Rabbi's work performance and anti-gay statements against one of the Restaurant's servers. Defendant LEVY reprimanded Plaintiff by reminding her that as a "goyim," she should not question the ethics of a Rabbi  After Defendant LEVY terminated that Rabbi's employment, Plaintiff objected to granting that Rabbi's application for unemployment benefits. Defendant LEVY retorted that the decision was not up to Plaintiff and that Defendant LEVY was going to confer with the owner of the Restaurant because he is Jewish and Jewish people "take care of their own."

35. On May 19, 2017, Defendant WEINFELD, during one of his inspections of the Restaurant, told Plaintiff that he had a dream about Plaintiff's buttocks, which resulted in an orgasm.

35. Defendant WEINFELD also told Plaintiff that in his experience, "getting sex was not about yes or no, rather, about how much." Plaintiff ended the conversation and left.

36. Plaintiff again reported Defendant WEINFELD's sexually harassing comment to Defendant LEVY, who then told Plaintiff that he did not trust her and he was going to find a way to remove the Restaurant's certification. Defendant LEVY added that because Plaintiff is a "goyim," that he could never believe anything she said and therefore, only believed the owner of the Restaurant because he is Jewish.

37. Soon thereafter, Defendant WEINFELD told Plaintiff that he was going to remove the Restaurant's kosher certification because Plaintiff reported Defendant WEINFELD to Defendant LEVY.

38. On June 26, 2017, Defendants removed the Restaurant's kosher certification in retaliation for Plaintiff's internal sexual harassment complaint against Defendant WEINFELD. That same day, Defendants WEINFELD and LEVY told Plaintiff that they warned her about the Restaurant's kosher decertification if she continued to report Defendant WEINFELD's sexual harassment. When Plaintiff told Defendants that their actions were against the law and that she was going to sue them, Defendants told Plaintiff that no one would believe a "goyim" woman over two Orthodox Rabbis.

39. In August 2017, per Defendants' insistence, the owner of the Restaurant terminated Plaintiff's employment.

40. **But for the fact that Plaintiff complained about Defendant WEINFELD's discrimination based on Plaintiff's sex and/or gender, Defendants would not have insisted on the termination of her employment.**

41. **Defendants' actions and conduct were intentional and intended to harm Plaintiff**.

42. As a result of Defendants' actions, Plaintiff feels extremely humiliated, degraded,

9

victimized, embarrassed, and emotionally distressed.

43. Additionally, as a result of Defendants' discriminatory treatment of Plaintiff, she has suffered pecuniary loss, severe emotional distress, and physical ailments.

44. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

45. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

46. Plaintiff had a business relationship with Basil in that she executed a contract with Basil making her approximately one-third owner.

47. Defendants' removal of the kosher certificate interfered with that business relationship.

48. Defendants' only offered to return the kosher certificate if Plaintiff no longer functioned as a manager in the restaurant and sold her ownership interest.

49. Defendants actions constituted the independent tort of retaliation.

50. Moreover, Defendants actions were done for the sole purpose of inflicting intentional harm on the Plaintiff.

51. Defendants actions injured Plaintiff's relationship with Basil as she was forced to sell her ownership interest in Basil and no longer worked as a general manager.

**FIRST CAUSE OF ACTION AGAINST DEFENDANTS**
*Gender Discrimination in Violation of the NYCHRL*

52. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

53. The Administrative Code of City of New York § 8-107(1)(a) provides that

> It shall be an unlawful discriminatory practice: for an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, **gender**, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

54. As described above, Defendants discriminated against Plaintiff on the basis of her gender in violation of the NYCHRL by, including but not limited to, subjecting her to disparate working conditions, and denying her the opportunity to work in an employment setting free of unlawful discrimination and harassment. As a result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

55. As a result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

56. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

**SECOND CAUSE OF ACTION AGAINST DEFENDANTS**
*Religious Discrimination in Violation of the NYCHRL*

57. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

58. The Administrative Code of City of New York § 8-107(1)(a) provides that

> It shall be an unlawful discriminatory practice: for an employer or an employee or agent thereof, because of the actual or perceived age, race, **creed**, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

59. As described above, Defendants discriminated against Plaintiff on the basis of her religion in violation of the NYCHRL, by including but not limited to, subjecting her to disparate working conditions, and denying her the opportunity to work in an employment setting free of unlawful discrimination and harassment. As a result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

60. As a result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

61. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

### THIRD CAUSE OF ACTION AGAINST DEFENDANTS
*Retaliation in Violation of the NYCHRL*

62. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

63. The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because

such person has opposed any practices forbidden under this chapter . . . ."

64. As described above, after Plaintiff engaged in activity protected by the NYCHRL, Defendants retaliated by subjecting her to conduct that would dissuade a reasonable employee from making or supporting a similar Amended Complaint of discrimination, culminating in the termination of her employment. Defendants took adverse actions against Plaintiff by recommending the termination of her employment with the purpose of retaliating against her because of her opposition to discrimination or participation in protected activities, causing Plaintiff to suffer damages as a result of that conduct.

65. As a result of Defendants' retaliatory conduct in violation of NYCHRL, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

66. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## FOURTH CAUSE OF ACTION
*Tortious Interference with Business Relations*

67. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

68. Plaintiff had a business relationship with Basil in that she was approximately one-third owner.

69. Defendants interfered with those business relations by removing the certificate in retaliation for her complaining of sexual harassment.

70. Defendants further interfered by only offering to return the certificate if Plaintiff sold her ownership interest and no longer worked as a manager at Basil.

71. Defendants actions injured Plaintiff's business relationship with Basil as she sold her ownership interest.

## JURY DEMAND

72. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the NYCHRL and, in that Defendants discriminated against Plaintiff on the basis of her gender and religion, and retaliated against Plaintiff for complaining of this discrimination;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and retaliation, and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
September 30, 2019

**PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

/s/ Marjorie Mesidor
Marjorie Mesidor, Esq.
Joshua M. Friedman, Esq.
45 Broadway, Suite 620
New York, New York 10006
T: (212) 248 - 7431
F: (212) 901 - 2107
mmesidor@tpglaws.com
jfriedman@tpglaws.com